Maya E. Rivera
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial: 646.493.7050
Fax: 646.755.3397
mrivera@beneschlaw.com

February 13, 2026

**VIA ECF**

Hon. Judge Margo K. Brodie
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:   *Wilson v. Dealmed Medical Supplies, LLC*, No. 1:26-cv-00009-MKB-TAM
>           <u>Request for Pre-Motion Conference re: Motion to Dismiss</u>

Dear Judge Brodie:

This firm represents Defendant Dealmed Medical Supplies, LLC ("Dealmed") in the above-referenced lawsuit and writes to respectfully request a pre-motion conference regarding leave to file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dealmed briefly sets forth its argument below, and reserves the right to assert additional arguments.

### I.   OVERVIEW OF THE ALLEGATIONS AND CLAIMS

This matter concerns a putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). Specifically, Plaintiff alleges the receipt of unsolicited text messages from Dealmed. Plaintiff contends that he began to receive unsolicited marketing text messages in 2024 and 2025. Plaintiff alleges that his number is on the national do-not-call registry. Plaintiff also contends that at least four messages were received on or before 7:02 AM, local time.

Plaintiff asserts two claims under Subsection (c)(5). <u>First</u>, Plaintiff brings a claim under the TCPA's corresponding regulation 47 C.F.R. § 64.1200(c)(2), alleging the receipt of text messages despite that he is on the national do-not-call registry. <u>Second</u>, Plaintiff appears to bring a claim under the TCPA's corresponding regulation 47 C.F.R. § 64.1200(c)(1), alleging the receipt of text messages in violation of the quiet hours restrictions.[1] Plaintiff pursues two putative nationwide classes, one corresponding to each claim, and each dating back more than four years.

Since 2024, Plaintiff has filed more than **60 TCPA actions** throughout the country. This conduct evidences that Plaintiff has certainly not been harmed, and in fact has benefitted greatly, from alleged solicitations.

### II.   SUBSECTION 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.

Plaintiff's claims each suffer a threshold, fundamental defect. That is, Subsection 227(c)(5) of the TCPA applies only to *telephone calls* and does not apply to text messages. *See* 47 U.S.C. § 227(c)(5) (allowing a private right of action only for recipients of violative "telephone call[s]").

---

[1] This claim is not stated as a separate count. However, given Plaintiff's putative class definition and the substance of his Complaint, this claim is addressed out of an abundance of caution.

### A. The FCC Improperly Expanded the Reach of the TCPA.

The TCPA was enacted in 1991, prior to the advent of text messaging. In relevant part, the TCPA authorizes the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Section 227(c)(5), in turn, affords a private right of action to persons receiving "more than one **telephone call** within any 12-month period" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5) (emphasis added).

Subsection 227(c) does not mention text messages. However, in 2003, the FCC proclaimed "call" under the TCPA "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"); *see also In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C. Rcd. 12247 (2023) (expanding this view to Subsection 227(c)(5) on the basis that the FCC believed it consistent with the goals of the statute).

Following the 2003 Order, courts simply fell in line with the FCC, on the auspices that they were incapable of disagreeing with FCC edicts under *Chevron* or under a statute known as the Hobbs Act (which was thought to bar trial courts from disagreeing with FCC orders). *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring to the FCC's 2003 Order).

### B. The Supreme Court Fundamentally Altered Statutory Interpretation.

Over the past two years, the Supreme Court effectuated a sea change in statutory interpretation. In 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations and citation omitted). The Court's focus is now to reach the *best* interpretation of the provision. *See id.* ("In the business of statutory interpretation, if it is not the best, it is not permissible."). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

And then last year, the Supreme Court issued its decision in *McLaughlin Chiropractic*. *See* 145 S. Ct. at 2011. This decision was critical because courts throughout the country had previously determined that FCC rulings were controlling on trial courts under a statute known as the Hobbs Act. *See Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010). In *McLaughlin Chiropractic*, the Supreme Court eliminated this line of authority, holding in no uncertain terms that district courts are not "bound by the FCC's interpretation of the TCPA." 145 S. Ct. at 2022.

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand (the meaning of the term "telephone call" in Subsection 227(c)(5)) must be interpreted to reach the "best" interpretation, as it was written in 1991, without influence by the modern shifts in technology and unconstrained by the interpretations of the FCC.

### C. A Text Message Is Not a Telephone Call

With the elimination of *Chevron* and the Hobbs Act as hurdles, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer is an equally straightforward "no." The *best* interpretation of the term "telephone call" simply does not include a form of written communication that did not exist when the TCPA was enacted and the language at issue was adopted.

Congress could not have meant for "telephone call" to include "text message" for the simple reason that text messages "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Courts engaged in a plain language analysis, post-*Loper* and *McLaughlin* have readily concluded that a text message is not a telephone call.

By way of example, as one Northern District of Florida court recently put it evaluating this identical issue and dismissing a claim under Subsection 227(c)(5):

> As CVS cogently explains,[] No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *see also Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) *on appeal* No. 25-2398 ("[U]nder a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (holding that a text message is not a telephone call)

Plain language ends this inquiry. Similarly instructive is the fact that the Congress amended the TCPA in 2018 and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements—but not the provision at issue—and distinguished telephone calls from text messages. *See* 47 U.S.C. § 227(e). This proves Congress, like everyone else, views a call and a text message as separate forms of communication. Congress did not amend Section 227(c) to include text messages (nor has it ever in the myriad amendments Congress has made to the TCPA in the last 20 years). *See also Sayed*, 2025 WL 2997759, at *2 (finding this amendment persuasive in holding that a text message is not a telephone call).

Subsection 227(c)(5) provides a right of action exclusively to recipients of *telephone calls*. Plaintiff does not allege the receipt of telephone calls, and thus has no claim as a matter of law.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Maya E. Rivera, Esq.