**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHET MICHAEL WILSON, *individually and on behalf of all others similarly situated*,<br><br><br>Plaintiff,<br><br>v.<br><br>DEALMED MEDICAL SUPPLIES, LLC<br><br>Defendant. | Case No. 1:26-cv-00009-MKB-TAM<br><br>**DEFENDANT DEALMED MEDICAL SUPPLIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**

Maya E. Rivera
1155 Avenue of the Americas, Floor 26
New York, NY 10036
(646) 593-7050
mrivera@beneschlaw.com

Mark S. Eisen (*pro hac vice* to be filed)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
(312) 506-3442
meisen@beneschlaw.com

*Attorneys for Defendant Dealmed*
*Medical Supplies, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 2

LEGAL STANDARD ............................................................................................. 3

ARGUMENT ........................................................................................................ 3

    I.     THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS. ................................................. 3

    II.    REGULATORY BACKGROUND ........................................................... 4

    III.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES. ....................... 5

        A.    The Plain Language of Section 227(c)(5) Requires Dismissal. .................................................................................... 5

        B.    Principles of Statutory Interpretation Limit the Scope of "Telephone Call." ............................................................... 9

        C.    Policy Goals Cannot Overcome Plain Language. .................................. 12

        D.    Contrary Rulings, and the FCC's Views, Are Unpersuasive. ................... 13

            i.    This Court should disregard pre-*Loper* and *McLaughlin* authorities. ................................................. 13

            ii.    Recent cases broadly construing "telephone call" are unpersuasive. ......................................................... 15

                a.    The contrary authority over-relies on acontextual dictionary definitions, ignoring the best interpretation. ....................................... 15

                b.    The contrary authority improperly turns to policy arguments. ...................................................... 17

                c.    The contrary authority relies on unpersuasive FCC views. .......................................... 18

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Fiesta Nissan, Inc.*,
No. 25-cv-00343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026)........................................15, 16

*Aminov v. DraftKings, Inc.*,
No. 24-cv-8472, 2025 WL 2108543 (E.D.N.Y. July 28, 2025)..................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................3

*Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*,
852 F.3d 1078 (D.C. Cir. 2017)..............................................................................................12

*Battaglia v. Quicken Loans, Inc.*,
No. 18-cv-1104, 2019 WL 430042 (W.D.N.Y Feb. 4, 2019)....................................................5

*Blow v. Bijora, Inc.*,
855 F.3d 793 (7th Cir. 2017) ....................................................................................................4

*Cabell v. Markham*,
148 F.2d 737 (2d Cir.), *aff'd*, 326 U.S. 404 (1945) ...............................................................16

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)................................................................................................................14

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025)............................................................................ *passim*

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020)....................................................................................................14

*Esquivel v. Mona Lee, Inc.*,
No. 25-cv-00607, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025)...........................................18

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)................................................................................................12, 13, 14, 17

*Howard v. Republican Nat'l Comm.*,
-- F.4th --, 2026 WL 90273 (9th Cir. Jan. 13, 2026) .......................................................15, 17

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..................................................................................................................6

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
    127 F.4th 303 (11th Cir. 2025) ...............................................................................12, 19

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025) ................................................................. *passim*

*Keating v. Peterson's Nelnet, LLC*,
    615 F. App'x 365 (6th Cir. 2015) ................................................................................6

*Krady v. Eleven Salon Spa*,
    No. 16-cv-5999, 2017 WL 6541443 (E.D.N.Y. July 28, 2017)....................................5

*Krasner v. Cedar Realty Tr., Inc.*,
    86 F.4th 522 (2d Cir. 2023) ........................................................................................6

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)......................................................................................................6

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024)............................................................................................ *passim*

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) ...................................................................................4

*McGonigle v. Pure Green Franchise Corp.*,
    No. 25-cv-61164, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026).................................19

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
    606 U.S. 146 (2025)........................................................................................... *passim*

*Mejia v. Time Warner Cable Inc.*,
    No. 15-cv-6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017)....................................3

*Melito v. Experian Marketing Solutions*,
    923 F.3d 85 (2d Cir. 2019).........................................................................................14

*Mujahid v. Newity, LLC*,
    No. 25-cv-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ...................15, 17, 18

*Murphy v. DCI Biologicals Orlando, LLC*,
    797 F.3d 1302 (11th Cir. 2015) ..............................................................................5, 14

*Perrin v. United States*,
    444 U.S. 37 (1979)........................................................................................................6

*Pulsifer v. United States*,
    601 U.S. 124 (2024)....................................................................................................10

*Radvansky v. 1-800-Flowers.com, Inc.*,
   No. 25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ........................................ *passim*

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ........................................................................................6

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ....................................................................................5, 14

*Sayed v. Naturopathica Holistic Health, Inc.*,
   No. 25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........................................8, 9

*Stockdale v. Skymount Prop. Grp., LLC*,
   No. 25-cv-1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ................................8, 9, 12, 16

*Trim v. Reward Zone USA LLC*,
   76 F.4th 1157 (9th Cir. 2023) .........................................................................................10

*United States v. Costello*,
   666 F.3d 1040 (7th Cir. 2012) ....................................................................................11, 16

*United States v. Melvin*,
   948 F.3d 848 (7th Cir. 2020) ............................................................................................6

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) .......................................................................................................11

*Wilson v. Better Mortg. Corp.*, -- F. Supp. 3d --, 2025 WL 3493815 (S.D.N.Y.
   Dec. 5, 2025) ................................................................................................................15

*Wilson v. MEDVIDI Inc.*,
   No. 25-cv-03996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ..........................15, 16, 17, 18

*Wisconsin Cent. Ltd v. United States*,
   585 U.S. 274 (2018) .......................................................................................................12

**Statutes**

47 U.S.C. § 227(a) ..............................................................................................................10

47 U.S.C. § 227(b) ...........................................................................................................4, 10

47 U.S.C. § 227(c) ...................................................................................................... *passim*

47 U.S.C. § 227(d) ..............................................................................................................11

47 U.S.C. § 227(e) ........................................................................................................4, 9, 10

**Other Authorities**

47 C.F.R. §§ 64.1200(c)(1)......................................................................................1, 2

47 C.F.R. § 64.1200(c)(2).........................................................................................2

*In Re Rules and Regulations Implementing the TCPA of 1991,*
    18 FCC Rcd. 14014........................................................................4, 15, 18

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules &*
    *Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods*
    *to Target & Eliminate Unlawful Robocalls,*
    38 F.C.C. Rcd. 12247 (2023)...................................................................5, 18, 19

Notice of Proposed Rulemaking, 17 FCC Rcd 17459 (2002) ...................................4, 18

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Dealmed Medical Supplies, LLC ("Dealmed") moves the Court for an order dismissing Plaintiff's Complaint with prejudice, on the grounds that Plaintiff fails to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiff brings a putative class action against Dealmed under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), contending he received text messages from Dealmed despite that he is on the national do not call list and during the so-called "quiet hours" delineated by the Federal Communications Commission ("FCC"). Plaintiff thus asserts one claim under 47 U.S.C. § 227(c)(5) through the TCPA's corresponding regulation 47 C.F.R. §§ 64.1200(c)(1) (the Quiet Hours regulation) and (2) (the do-not-call or DNC registry regulations).

The problem with Plaintiff's claim is that the provisions at issue do not apply to text messages. *See* 47 U.S.C. § 227(c)(5) (applying the private right of action only to "telephone calls"). Plaintiff's only route to a claim is that the FCC has previously issued orders expanding the term "calls" to include text messages. However, on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, holding trial courts are "not bound by the FCC's interpretation of the TCPA." *See* 606 U.S. 146, 168 (2025). This Court's prerogative now is to reach the "single, best meaning" of the provision at issue, using "the reading the court would have reached if no agency were involved" to interpret the TCPA. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (internal quotations and citation omitted. Furthermore, it is the best reading of the TCPA as written in 1991 (when it was enacted) that controls, in light of the Supreme Court's instruction that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotation and citation omitted).

Turning to the TCPA at the time it was enacted, Plaintiff's claim must be dismissed. Plaintiff alleges only that he received text messages on his cell phone, but the plain language of

1

the TCPA and its history indicate the term "telephone call" could not have been intended to cover text messages, a form of written communication that did not exist in 1991. *See, e.g.*, *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) on appeal No. 25-2398 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("Certainly, no ordinary person would think of a text message as a '*telephone* call.'") (emphasis in original); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) ("The statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."). While communications preferences have shifted since 1991, it is for Congress alone to expand or alter the TCPA.

This case should be dismissed with prejudice. Plaintiff simply cannot avail himself of the claim at issue, which is evident from the face of Plaintiff's Complaint.

## **BACKGROUND**

Plaintiff, an Oregon resident, is a prolific TCPA filer. Since late 2024, Plaintiff has filed more than 60 TCPA actions throughout the country. On January 2, 2026, Dealmed joined this growing list of Plaintiff's victims. (*See* Dkt. 1.)

Plaintiff's Complaint is simple. Plaintiff contends he received text messages from Dealmed without his consent despite that he registered on the national do not call registry. (*Id.* ¶¶ 18, 21.) Plaintiff further contends certain of these messages were received prior to 7:02 a.m. local time in Oregon. (*Id*. ¶¶ 19, 20.) Plaintiff's Complaint rests on the alleged receipt of text messages. (*Id.* ¶ 18.) On this basis, Plaintiff asserts two claims under 47 U.S.C. § 227(c)(5), through 47 C.F.R. § 64.1200(c)(1)-(2) for the alleged receipt of messages prior to 8:00 a.m. and for the alleged receipt of text messages while on the national DNC registry. Plaintiff seeks to represent two nationwide putative classes, remarkably reaching back to 2022, relating to each of his two claims. (*Id.* ¶ 29.)

**LEGAL STANDARD**

To survive a motion under Rule 12(b)(6), "[a] complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Aminov v. DraftKings, Inc.*, No. 24-cv-8472 (MKB), 2025 WL 2108543, at \*2 (E.D.N.Y. July 28, 2025) (Brodie, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Furthermore, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). It is axiomatic that "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). In evaluating 12(b)(6) motions, the Supreme Court has urged courts "to draw on [their] judicial experience and common sense." *Id*.

**ARGUMENT**

**I.    THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS.**

The Supreme Court has issued two recent decisions effecting a sea change in statutory interpretation. In 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function to reach the "best" interpretation of a statute, using "the reading the court would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 400 (internal quotations and citation omitted). The Supreme Court further reminded that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

And last year, the Supreme Court issued its decision in *McLaughlin Chiropractic*. *See* 606 U.S. at 149. This decision is critical because the courts throughout the country—including within this Circuit—previously viewed FCC Orders as dispositive at the district court level under the Hobbs Act. *See, e.g.*, *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL

3

3278926, at *15 n.7 (S.D.N.Y. Aug. 1, 2017); *Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014). In *McLaughlin Chiropractic*, the Supreme Court conclusively eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 606 U.S. at 168. Rather, courts are to interpret the TCPA as courts traditionally do. *Id.*

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand must be interpreted to reach the "best" interpretation, as the statute was written in 1991 (when it was passed), unconstrained by the interpretations of the FCC.

## II.    REGULATORY BACKGROUND

Section 227(c) of the TCPA, under which Plaintiff brings his claim, affords a private right of action to "[a] person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Simply put, Section 227(c) does not mention text messages, even though the TCPA itself distinguishes between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e).

In 2002, the FCC issued a Notice of Proposed Rulemaking regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See* Notice of Proposed Rulemaking, 17 FCC Rcd 17459, ¶ 1 (2002) ("2002 NPRM"). This NPRM never mentioned text messages. Nevertheless, in 2003, the FCC proclaimed without any analysis that the term "call" under the TCPA "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"). The FCC identified no statutory basis or authority for concluding that a text message was a "call," and provided no rationale for its *ipse dixit* conclusion. *See id.* It also bears noting that the FCC was only interpreting the term "call" as used in 47 U.S.C. § 227(b), and not the term

4

"telephone call" as used in 47 U.S.C. § 227(c). *See, e.g.*, *Jones*, 2025 WL 2042764, at *4 (noting the FCC was not interpreting the term "telephone call" under Subsection 227(c)(5)). The FCC did not even attempt to expand "telephone call" under Subsection 227(c)(5) to encompass text messages until 2023. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023). The FCC similarly provided no substantive statutory analysis for its conclusion.

Courts simply fell in line with the FCC, believing they were incapable of disagreeing. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding courts "must defer" to the FCC's view that a text message was a call); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *Krady v. Eleven Salon Spa*, No. 16-cv-5999MKBRML, 2017 WL 6541443, at *3 (E.D.N.Y. July 28, 2017), *R&R adopted*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017) (same); *Battaglia v. Quicken Loans, Inc.*, No. 18-CV-1104, 2019 WL 430042, at *2 (W.D.N.Y Feb. 4, 2019).

III.   **PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.**

   A.   **The Plain Language of Section 227(c)(5) Requires Dismissal.**

With the elimination of *Chevron* and the Hobbs Act as hurdles, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer is an equally straightforward "no." The *best* interpretation of the term "telephone call" as written in 1991 cannot encompass a form of *written* communication (bearing a closer resemblance to a letter or email than a phone call) that did not exist at the time the statute was enacted. To find otherwise would run afoul of the plain and common meaning and violate myriad rules of statutory construction.

It is axiomatic that "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *McLaughlin Chiropractic*, 606 U.S. at 168 ("The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation . . . ."). Plain language is dispositive, ending this Court's inquiry. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well.") (internal quotations and citation omitted).

"Telephone call" is not defined, and thus courts evaluate the "ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted . . . ." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020); *Krasner v. Cedar Realty Tr., Inc.*, 86 F.4th 522, 529 (2d Cir. 2023) (same). Congress could not have meant for telephone call to include text messages, which "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA. In fact, the first text message was not sent until December 3, 1992, almost a full year after the December 20, 1991, enactment of the TCPA."); *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.").

6

Plain language ends the inquiry here, as evidenced by myriad recent district court decisions.

First, in *Davis v. CVS Pharmacy*, a Northern District of Florida court engaged in the following instructive analysis of this exact issue involving a text message claim under 47 U.S.C. § 227(c)(5):

> As CVS cogently explains, [] No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.
>
> . . . . Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

*Davis*, 797 F. Supp. 3d at 1273 (internal citation omitted, emphasis in original). The court determined its "role is not to look beyond clear language to ascertain Congress's purpose." *Id.* at 1274. The Court thus concluded it need not adopt the FCC's view, which "conflicts with the ordinary public meaning of clear statutory text." *Id.* at 1275.

Second, and similarly instructive is the Central District of Illinois's recent decision in *Jones v. Blackstone Med. Services, LLC*, which likewise evaluated whether Section 227(c)(5) applied to text messages. *See* 792 F. Supp. 3d at 894. Following *Loper Bright* and *McLaughlin Chiropractic*, the court engaged in its own statutory analysis. The court analyzed and held:

> Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. . . . Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Id.* at 899 (internal quotations and citations omitted). While the court afforded respect to the FCC's view, it found the plain language controlled, holding "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id.* at 901. It is for Congress to update the TCPA. *Id.*

7

Courts throughout the country have engaged in thorough analyses and joined these decisions, determining that "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky*, 2026 WL 456919, at *3; *see also Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) ("Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance."); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("[I]n common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication . . . .").

It is inconceivable that Congress intended the common and well-understood term "telephone call" to encompass a form of *written* communication yet to exist, and one bearing no similarity to a telephone call. Reading "telephone call" to encompass "text message" would similarly render any type of communication—emails, app-to-app messages, push notifications— equally a "telephone call" if it is received on a handset. *See, e.g.*, *Stockdale*, 2026 WL 591842, at *3 n.5 ("To hold otherwise would suggest that any communication from a modern cell phone is a 'telephone call' under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone. This broad interpretation of "telephone call" is not supported by the term's plain meaning as defined in 1991."). As the Supreme Court emphasized in *Loper*: "every statute's meaning is fixed at the time of enactment." *See* 603 U.S. at 400 (internal quotation marks omitted). And it would be backwards to attribute a more expansive or broader meaning to telephone call in 1991 (when text messages *did not exist*) than one would attribute that term now (when text messages are commonplace). The simple fact of the matter is that a text message was not a telephone call in 1991 and certainly is not now. The meaning of "telephone call" has not

8

somehow changed since 1991, and it certainly has not contracted in meaning. Nor could this commonplace term be read to hold a *sui generis* and unique meaning exclusive to the TCPA encompassing all forms of communication received on a handset.

The inquiry at hand is straightforward—whether the term "telephone call" as written in 1991 is *best viewed* as encompassing text messages. It is not. It is within Congress's sole province to amend the Subsection 227(c)(5) to include text messages.

**B.      Principles of Statutory Interpretation Limit the Scope of "Telephone Call."**

In addition to the plan language, the context of the TCPA itself and principles of statutory interpretation evidence that a "telephone call" is not a mercurial or nebulous term to encompass all outreach received on a handheld device. It carries its commonly understood meaning.

First, Congress amended the TCPA in 2018 and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements, and distinguished telephone calls from text messages. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Section 227(e) speaks to "caller identification services," which in turn is defined referring to "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A) (emphasis added). Congress thus distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B).

This proves that Congress, like everyone else, views a call and a text message as separate forms of communication. Congress did not amend Section 227(c) to include text messages (nor has it in the myriad amendments to the TCPA in the last 20 years). *See Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)); *Stockdale*, 2026 WL 591842, at *4 n.7 ("Congress

knows how to include text messages when it wants to, like it did in a different section of the TCPA through a 2018 amendment."); *Radvansky*, 2026 WL 456919, at \*3 ("Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended. . . . This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls . . . .").

This is critical because "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Congress did not amend Section 227(c) to include text messages, even though it clearly understood the difference between a telephone call and a text message. If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation between calls and text messages in Section 227(e) would be meaningless; Congress would have just prohibited "calls" using false Caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

Second, Congress's definition of "telephone solicitation" makes clear that Congress did not view "telephone calls" and "messages" to be interchangeable terms. The TCPA defines "telephone solicitation" to "mean[] the initiation of a telephone call *or* message . . . ." 47 U.S.C. § 227(a)(4) (emphasis added).[1] The private right of action under 47 U.S.C. § 227(c)(5) refers only to "telephone call." 47 U.S.C. § 227(c)(5). As the court in *Davis* put it:

---

[1] It bears noting that the term "message" does not mean "text message." This definition, was adopted in 1991, prior to the advent of text messages. See Jones, 792 F. Supp. 3d at 900 (finding that "Section 227(a)(4) does not refer to 'text message'" and cannot be interpreted as covering text messages). "Message" refers not to text messages, but prerecorded voice messages. The term "message" appears throughout the TCPA, elucidating its meaning. See 47 U.S.C. § 227(b)(1)(B)

10

> [This] shows that Congress does not use the term "telephone call" to encompass all "messages." Although Davis would have me conclude Congress used the term "telephone call" in § 227(c)(5) and the term "telephone call or message" in § 227(a)(4) to have identical meanings, courts should "presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters— that is, the distinct words have different meanings."

*Davis*, 797 F. Supp. 3d at 1274 (citation omitted); *Radvansky*, 2026 WL 456919, at *4 (same).

And <u>third</u>, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within the commonly understood term "telephone call" all communication forms (now and in the future) received on a handset. There is nothing about the term "telephone call" that suggests Congress's clairvoyance to include a form of written communication much more analogous to a letter or an email, much less other forms of communication (like emails and app-based messaging) also received on a handset. Congress remains free to speak clearly and amend the TCPA to include text messages (and/or other forms of communication) should it so choose. In the meantime, "telephone call" is a simple and commonly understood term; it does not include text messages.

To that end, as the Seventh Circuit put it:

> [O]ne can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said. This principle, it should be noted, does not direct interpreters to follow the literal or dictionary meaning of a word or phrase. To the contrary, it demands careful attention to the nuances and specialized connotations that speakers of the relevant language attach to particular words and phrases in the context in which they are being used.

*United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) (internal quotations and citation omitted). There is nothing about the term "telephone call," as used in the TCPA, that would

---

(prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages")..

11

remotely suggest Congress intended anything other than the ordinary meaning in 1991. On the other hand, myriad provisions of the TCPA—namely its provisions regarding fax machines and pagers—evidences that the TCPA was written for the *moment* and not for posterity.

The Supreme Court said it best: "'Senescent' as a [TCPA provision] (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading . . . ." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). So, too, here. That "telephone calls" may have given way to a more preferred form of written communication is no cause to eschew the best reading.

### C.       Policy Goals Cannot Overcome Plain Language.

Whether it may be good policy to include "text messages" within the term "telephone call," the Supreme Court teaches that only Congress can "revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Plaintiff cannot turn to this Court to further his policy goals. Plaintiff must turn to Congress.

This Court's role is narrowed to the text of the statute. *See, e.g.*, *Davis*, 797 F. Supp. 3d at 1274 ("[T]the court's role is not to look beyond clear language to ascertain Congress's purpose."); *Jones*, 792 F. Supp. 3d at 901 ("It is not for a court to legislate by reading into the TCPA something that is not there."); *Stockdale*, 2026 WL 591842, at *4 ("But it is for Congress—not this Court— to fill those gaps in the wake of Chevron's reversal."). Indeed, as the Supreme Court reminded in *Loper Bright*, "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Loper Bright*, 603 U.S. at 403; *see also Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 315 (11th Cir. 2025) ("Atextual good policy cannot overcome clear text."); *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("But the fact that the agency believes its [TCPA rule] is good policy does not change the statute's text.").

12

The Supreme Court recently had occasion to evaluate a similar effort to read the TCPA's terminology to encompass new and evolving technologies. In *Facebook, Inc. v. Duguid*, the Supreme Court evaluated an effort by a plaintiff to expand the term "automatic telephone dialing system" in the TCPA—another term drafted in 1991—to embrace certain modern dialing equipment. 592 U.S. 395 (2021). The Court rejected this argument, including the broad policy arguments articulated by the plaintiff. *Id*. at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). The Court determined that "Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked." *Id*. at 409.

The TCPA was not intended to act as free-wheeling statute to address all outreach received on a handheld device. A text message is not a "telephone call" and is not actionable under Section 227(c)(5), unless and until Congress amends the statute. And it is the exclusive province of Congress to so amend the TCPA. *See, e.g.*, *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating.")

**D.    Contrary Rulings, and the FCC's Views, Are Unpersuasive.**

While multiple courts have concluded that Subsection 227(c)(5) *does not* apply to text messages, Plaintiff will no doubt turn to authorities reaching the contrary conclusion. These authorities are unpersuasive, for the reasons detailed below.

**i.    This Court should disregard pre-*Loper* and *McLaughlin* authorities.**

To the extent Plaintiff turns to pre-*Loper Bright* and pre-*McLaughlin Chiropractic* authority, this authority should be disregarded. These cases largely fail to engage in any independent statutory analysis, relying exclusively on the FCC's views, particularly in light of

13

*Chevron* and the pre-*McLaughlin Chiropractic* view of the Hobbs Act. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy*, 797 F.3d at 1305 (deferring wholesale to the FCC's 2003 Order).

In Plaintiff's February 22, 2026 letter submission opposing Dealmed's request for a pre-motion conference, Plaintiff turned to *Melito v. Experian Marketing Solutions*, 923 F.3d 85 (2d Cir. 2019). (Dkt. 13.) The Second Circuit in *Melito* did not take up the issue here; it focused on whether the plaintiff alleged an injury in fact. *See Melito*, 923 F.3d at 88. At most, the court noted in passing that "[a]lthough text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them." *Id.* The court further noted that the issue of whether text messages were covered had been undisputed before the Supreme Court. *Id.* This creates no binding precedent here, and it was grossly misleading of Plaintiff to suggest to the contrary.

Because of the state of the law pre-*Loper Bright* and pre-*McLaughlin*, the *Melito* court's observation was correct—the issue at hand here went unchallenged for years. *See Duguid*, 592 U.S. at 400 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. We therefore assume that it does without considering or resolving that issue."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting whether a text message was a call was undisputed); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 (2d Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 2509 (2021), *and abrogated by Facebook*, 592 U.S. 395 (noting the issue was undisputed). None of these decisions provide binding or persuasive guidance, as these cases did not engage in an analysis of the underlying issue. *See Davis*, 797 F. Supp. 3d at 1273 ("In short, neither *Campbell-Ewald* nor *Facebook* includes any binding interpretation of the statutory term 'telephone call' at issue here."); *Radvansky*, 2026 WL 456919, at *4 (same).

14

> ii.     **Recent cases broadly construing "telephone call" are unpersuasive.**

Plaintiff will likewise turn to recent cases broadly interpreting the term "telephone call" to plausibly encompass text messages. These authorities suffer from myriad fundamental defects and are thus unpersuasive.

> a.     *The contrary authority over-relies on acontextual dictionary definitions, ignoring the best interpretation.*

First, these decisions make the critical error of relying on dictionary definitions divorced from context. This leads to identifying a *possible* interpretation, rather than the *best* interpretation. By example, Plaintiff will turn to cases like *Wilson v. Better Mortg. Corp.*, a Southern District of New York decision. In *Wilson*, the court led its analysis with a broad dictionary definition to find that the term call "encompassed any communication made using a telephone." *See* – F. Supp. 3d - -, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025).[2] The court then concluded that "[t]ext messages fit easily within that broad definition." *Id.*; *see also Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026) (same); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (same); *Howard v. Republican Nat'l Comm.*,  -- F.4th -- , 2026 WL 90273, at *4 (9th Cir. Jan. 13, 2026) (same).[3]

Overreliance on dictionary definitions results in ignoring the common meaning of the term in favor of an overwrought construction of a simple term that would have been unheard of in 1991. As Judge Learned Hand put it, "it is one of the surest indexes of a mature and developed

---

[2] This *Wilson* matter was filed by the same Plaintiff as filed this action, representing just one of the dozens of cases he has filed in the last year.

[3] Courts like the *Wilson* court similarly find that modern understandings of the distinction between telephone calls and text messages "improperly substitute[] the present-day meaning of 'telephone call' for the ordinary public meaning of that term when § 227(c) was enacted in 1991." *Wilson*, 2025 WL 3493815, at *6. This logic implies that the term telephone call was somehow broader *in 1991*, when telephone call could only have meant one thing. It defies common sense to suggest that the term "telephone call" has a narrower meaning today than it did in 1991.

jurisprudence not to make a fortress out of the dictionary . . . ." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404 (1945); *see also Costello*, 666 F.3d at 1043 ("[T]he choice among meanings [of words in statutes] must have a footing more solid than a dictionary—which is a museum of words, an historical catalog rather than a means to decode the work of legislatures.") (internal quotations and citation omitted). It also bears noting that courts like *Wilson* rely on the definition of "call" and not "*telephone* call" taken together.[4] As one recent court held, the appropriate definitional analysis is to look to the definition of "telephone" in conjunction with "call," which confirms that a telephone call "reproduce[s] sounds at a distance," and thus does not encompass text messages. *Stockdale*, 2026 WL 591842, at *3.

The necessary outcome of this overreliance on dictionary definitions is identifying a *possible* meaning, rather than the *best* meaning. It is *possible* that one could use the term "telephone call" to encompass text messages. But would that be the best interpretation of what Congress meant by the term in 1991? Of course not. *See Jones*, 792 F. Supp. 3d at 901 (finding the plaintiff's interpretation of telephone call "is an eminently reasonable one," but holding "[n]evertheless, in the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.") (cleaned up). The above authorities thus engage in the wrong analysis, failing to search for the *best* interpretation. *See Wilson*, 2025 WL 3493815, at *5; *see also Alvarez*, 2026 WL 202930, at *4 (improperly phrasing the inquiry as "whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991.). Were it otherwise, the broad definition of "telephone call" would encompass every form of modern communication, from email to push notifications to app messages just because they are sent and received on a cell phone. This cannot be the case.

---

[4] The Court in *Wilson* suggested it was looking to the definition of "telephone call," but a review of the authorities it cited appears to confirm the definitions provided were for the term "call." *See Wilson*, 2025 WL 3493815, at *5.

### b.  *The contrary authority improperly turns to policy arguments.*

Second, many of the authorities Plaintiff will likely turn to improperly allow policy arguments to carry the day, suggesting an ends-driven approach to interpreting the provision at issue. *See, e.g.*, *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (looking to the perceived goals of the statute); *Wilson*, 2025 WL 3493815, at *8 (same); *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) (same); *Howard*, 2026 WL 90273, at *4 (same)

Perceived policy goals are not proper considerations here. *See Loper Bright*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). Indeed, the Supreme Court has already rejected the exact same perceived policy goals as unpersuasive in interpreting the TCPA. *See Facebook*, , 592 U.S. at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). Even if Congress was broadly concerned with "protecting subscribers from telephone solicitations, not on any one form of such solicitations," *Wilson*, 2025 WL 3493815, at *8, this does not mean Congress intended by "telephone call" to encompass all forms of outreach received on a handset.

Perhaps most saliently, turning to perceived policy goals usurps the role of Congress. As the Supreme Court recently reminded:

> The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch. And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute.

*Loper Bright*, 603 U.S. at 403; *see also Jones*, 792 F. Supp. 3d at 901 ("It is not for a court to legislate by reading into the TCPA something that is not there.").

### c.       *The contrary authority relies on unpersuasive FCC views.*

Third, the cases on which Plaintiff will likely rely in turn cite to entirely unsupported and unreasoned views of the FCC. By way of example, the *Wilson* court looked to the FCC's 2003 and 2024 Orders and held that "[t]he FCC's consistent interpretation that the TCPA applies to text messages . . . is informed by the agency's subject matter expertise." *Wilson*, 2025 WL 3493815, at *8; *see also Mujahid*, 2025 WL 3140725, at *3 ("[I]nterpreting § 227(c) to include text messages is consistent with guidance from the FCC."); *Esquivel v. Mona Lee, Inc*., No. 3:25-CV-00607-H-BLM, 2025 WL 3275607, at *2 (S.D. Cal. Nov. 24, 2025) ("Additionally, FCC guidance states that text messages constitute calls under the TCPA.").

The reliance on the FCC's views is problematic for two reasons. At the outset, the Supreme Court noted that agency interpretations "issued roughly contemporaneously with enactment of the statute and remained consistent over time" can be persuasive. *See Loper Bright*, 603 U.S. at 386, 394. The FCC's views do not fit this bill. The FCC did not address text messages until 2003, more than a decade after the TCPA was enacted, and even then it was in the context of Subsection 227(b). And the FCC did not endeavor to apply Subsection 227(c) to text messages until 2023.

More substantively, neither of the FCC's orders regarding text messages engaged in any statutory analysis. Far from reasoned analyses turning on agency expertise, the FCC's 2003 interpretation of the term "call" in Subsection 227(b) involved no analysis. The FCC provides *no* explanation for its view. *See* 2003 Order, 18 F.C.C. Rcd. at 14115. Indeed, the NPRM in 2003 did not so much as mention text messages or suggest that the FCC would be taking up the issue. *See* NPRM, 17 F.C.C. Rcd. at 17459. In its 2023 Order, the FCC similarly provided no statutory analysis of any kind. *See* 2023 Order, 38 F.C.C. Rcd. at 12257, 12272. Instead, the FCC obliquely

18

referred to the "objectives of the TCPA" and determined that its interpretation "is consistent with federal court opinions and will deter both illegal texts and make DNC enforcement easier." *Id*.[5]

These FCC views are simply not persuasive. The FCC engaged in no statutory analysis, or indeed any substantive analysis, of the underlying issue such that one could say the FCC was utilizing its expertise. To the extent orders of the FCC carry any weight post-*Loper Bright*, these particular views carry no weight. *See, e.g.*, *Davis*, 797 F. Supp. 3d at 1275 ("One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text.").

Finally, it bears noting that the FCC certainly does not have the authority to "fill the gap" of the TCPA and expand the private right of action under Subsection 227(c)(5) to encompass text messages. The TCPA does not provide the FCC discretion to redefine "telephone call" or expand the right of action. *See* 47 U.S.C. § 227(c). Where Congress affords an agency definitional authority, it does so expressly. *See Loper Bright*, 603 U.S. at 394 (providing examples). The FCC cannot alter Congress's choices. *See Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025); *McGonigle v. Pure Green Franchise Corp.*, No. 25-61164, 2026 WL 111338, *2 (S.D. Fla. Jan. 15, 2026) (indicating the expansion of "telephone call" to include text messages was not delegated to the FCC). Indeed, one recent Southern District of Florida court suggested that expanding the meaning of "telephone call" is not merely "filling up the details," but rather would expand the private right of action, and such authority (even if given) could run afoul of the nondelegation doctrine. *See  McGonigle*, 2026 WL 111338, at *2.

---

[5] It must be noted the circular nature of the FCC's logic. That is, it determined in 2003 that text messages constituted calls, and in turn courts followed that view—either under *Chevron* and/or as a result of the then-prevailing view of the Hobbs Act—only for the FCC to then cite to those courts as rationale for its 2023 view. Courts have only furthered that circular logic by in turn citing back to the FCC's 2023 view.

19

\*          \*          \*

In sum, this Court should follow the recent wave of courts—like *Jones* and *Davis*—holding that "telephone call" as written in 1991 does not include text messages. The contrary authority, for the reasons detailed above, is unpersuasive. The common and ordinary meaning of "telephone call" cannot be construed to encompass a form of written outreach that did not exist at the time the TCPA was enacted. To find otherwise would sweep within the TCPA virtually all modern forms of communication from emails to app-based messaging.

## CONCLUSION

For the foregoing reasons, Dealmed Medical Supplies, LLC respectfully requests that this Court (i) dismiss Plaintiff's Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

Dated: March 23, 2026                              Respectfully submitted,

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**

By: */s/ Maya E. Rivera*

Maya E. Rivera
1155 Avenue of the Americas, Floor 26
New York, NY 10036
(646) 593-7050
mrivera@beneschlaw.com

Mark S. Eisen (*pro hac vice* forthcoming)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
(312) 506-3442
meisen@beneschlaw.com

*Attorneys for Defendant Dealmed*
*Medical Supplies, LLC*

20