**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : | Case No.: 1:26-cv-00009-MKB-TAM |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEALMED MEDICAL SUPPLIES, LLC | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | / | |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Introduction** ........................................................................................................... 1

**Background** ........................................................................................................... 3

**Argument** ............................................................................................................. 5

I. The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages ............................................................................................................... 5

    A. The plain meaning of the word "call" includes text messages ......................................... 6

    B. That interpretation aligns section 227(c)'s private right of action with its substantive provisions ................................................................................ 11

    C. Courts in the Second Circuit and elsewhere confirm that text messages qualify as "calls" under the TCPA .......................................................................... 12

    D. Dealmed's arguments for a narrower interpretation are unpersuasive ............................ 16

**Conclusion** .......................................................................................................... 25

**Table of Authorities**

**Cases**

*Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471 (N.D. Ill. 2009) ............ 8

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737 (6th Cir. 2013) ..................... 8

*Alvarez v. Fiesta Nissan, Inc., 2026 U.S. Dist. LEXIS 14155* (S.D. Tex. January 26, 2026)….20

*Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228 (E.D.N.Y. 2019) ............ 14

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ....................................................... 10, 13

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ............................... 11

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ................................... 20

*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025) ............................ 16, 17

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ........................................................................ 16

*Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) ............................................. 2, 13

*Esquivel v. Mona Lee, Inc.*, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ............................ 2

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) ..................................................... 11

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ......................................... 8, 20

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) ...................... 2, 7, 10, 18

*Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025) ............................................... 4, 10, 19

*In re Erickson*, 815 F.2d 1090 (7th Cir. 1987) ....................................................................... 17

*Jones v. Blackstone Med. Servs., Inc.*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) ................. 16, 17

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ................................. 10

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ................................................. 4

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ..... 2, 8, 16

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..................................... 2, 10, 13, 18

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ................................. 2, 13, 15

*Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .... 2, 9, 12, 20

*New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019) .................................................................... 2

*Newell v. Child.'s Dental Health Assocs., LLC*, 2026 U.S. Dist. LEXIS 74360 (E.D. Pa. Apr. 6, 2026) .......................................................................................................................... 10

*Perrin v. United States*, 444 U.S. 37 (1979) ........................................................................... 6

*Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638 (S.D. Tex. 2023) ........................................... 19

*Rubin v. Staples, Inc.*, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026) ....................... 10

*Sagar v. Kelly Auto. Grp., Inc.*, 2021 WL 5567408 (D. Mass. 2021) ...................................... 8

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................... 2, 7, 9, 12, 25

*Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237 (S.D. Fla. 2019) ......................... 8

*Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025) ........................................................ 2, 12

*Squillacote v. United States*, 739 F.2d 1208 (7th Cir. 1984) ................................................ 17

*Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026)..21

*Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020) ................................. 8, 10

*Wilson v. Better Mortgage Corp.*, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) .............. 3, 7, 14

*Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) ........... 14

*Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .............. 2

*Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274 (D. Or. Jul. 21, 2025) ..... 2

*Wisconsin Central Ltd. v. United States*, 585 U.S. 274 (2018) ................................................ 2

**Statutes**

47 U.S.C. § 227 ............................................................................................. passim

47 U.S.C. § 227(a)(4) ....................................................................................... 2, 11

47 U.S.C. § 227(b) ........................................................................................... 8, 20

47 U.S.C. § 227(c) ........................................................................................... passim

47 U.S.C. § 227(c)(1) ....................................................................................... 2, 12

47 U.S.C. § 227(c)(3) ............................................................................................ 4

47 U.S.C. § 227(c)(5) ...................................................................................... passim

47 U.S.C. § 227(e) ............................................................................................... 23

**Regulations**

47 C.F.R. § 64.1200 ................................................................................. passim

47 C.F.R. § 64.1200(c) ................................................................................. 5

47 C.F.R. § 64.1200(e) ............................................................................ 5, 9

**Other Authorities**

18 FCC Rcd. 14014 (2003) ...................................................... 2, 9, 25

30 FCC Rcd. 7961 (2015) ................................................................... 5

38 FCC Rcd. 12247 (2023) ......................................................... 5, 21

88 Fed. Reg. 20800 (2023) .............................................................. 5

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement
and Deterrence Act, Pub. L. No. 116-105 ...................................... 20

**Introduction**

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person"

1

with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant Dealmed's motion to dismiss argues otherwise, insisting that because text messages didn't exist when the TCPA became law, the TCPA cannot cover texts. Dealmed's incorrect intuition also animates the handful of recent district court decisions that have adopted Dealmed's reading. That's not, however, how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). And although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). Nor does it matter that no one would describe a text message as a "telephone call" in "today's American parlance." [Dkt. 16 at 7]. In fact, modern conversational parlance can be downright misleading when times have changed.

The Second Circuit has already treated text messages as "calls" for TCPA purposes. *See Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88–89 (2d Cir. 2019) (recognizing FCC interpretation that texts are covered and relying on *Campbell-Ewald*), and *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 283–84 (2d Cir. 2020) (quoting *Campbell-Ewald*, "[i]t is undisputed that a text message…qualifies as a 'call'" and holding an unwanted text is a concrete injury).

Indeed, Judge Engelmayer rejected the exact argument by another TCPA defendant in this Court on December 5, 2025 in another case involving Mr. Wilson in *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) and did so relying on Second Circuit Court of Appeals authority.

The Defendant's motion to dismiss should be denied.

**Background**

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). As one court recently observed, that definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3*; see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497–500 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).[1]

The statute grants the FCC broad discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C.

---

[1] Unless otherwise specified, all internal quotation marks, alterations, and citations are omitted from quotations throughout.

§ 227(c)(1)(E). And it directs the FCC to evaluate alternative approaches based on open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." *Id.* § 227(c)(1)(A).

Any Do Not Call List regulations that the FCC establishes must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). For example, the rules must require phone companies to notify their subscribers about the Do Not Call List, and must specify how frequently the list will be updated. *Id.* § 227(c)(3)(B), (c)(3)(I). And—as relevant here—the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" on the national Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

The FCC's implementing regulations for the Do Not Call List include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders—and, more recently, in a formal regulation— that this rule applies to "calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115– 16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3; 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr.

4

7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (Dec. 18, 2023).[2]

Plaintiff Chet Michael Wilson is the subscriber and customary user of a cellular telephone number ending in 9999, which he has used exclusively for personal and household purposes and not for business (ECF No. 1 ¶¶ 9–11). Plaintiff registered his number on the National Do Not Call Registry more than thirty days before the events at issue (ECF No. 1 ¶ 16). Despite that registration—and despite Plaintiff never providing his number to Defendant or consenting to receive solicitations—Defendant sent multiple telemarketing text messages to Plaintiff's number in 2024 and 2025 (ECF No. 1 ¶¶ 17, 21, 24).

These messages were not intended for Plaintiff and promoted Defendant's goods or services (ECF No. 1 ¶¶ 22–23). Several of the texts were also sent during prohibited hours, including before 8:00 a.m. local time (ECF No. 1 ¶ 19). Plaintiff did not request any information from Defendant and had no prior relationship with it (ECF No. 1 ¶ 25).

As a result of these unsolicited messages, Plaintiff suffered an invasion of privacy, intrusion upon his seclusion, and nuisance, including disruption of his daily life and use of his phone (ECF No. 1 ¶ 26).

## Argument

Dealmed contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any

---

[2] The FCC's interpretation of the word "call" was first discussed in the context of the TCPA's nearby prohibitions on autodialed calls, found in section 227(b). *See* 18 FCC Rcd. at 14115 ¶ 165. But the FCC has since clarified that it applies to section 227(c), too. *See* 38 FCC Rcd. at 12256–57 ¶ 26.

attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And Dealmed's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways.

Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

## I.    The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.

### A.  The plain meaning of the word "call" includes text messages

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24

6

(quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. (Dealmed hasn't disputed that a text is a "telephone" communication; of course it is.) So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section

7

227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at \*2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[3] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at \*4 (N.D. Ill. 2009).

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And

---

[3] *See, e.g.*, Paging Network, Inc., *Annual Report*, 8 (1991), https://perma.cc/W6UW-UEM2 (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

8

the FCC has consistently adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*; 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

To be sure, the FCC first interpreted the word "call" to include text messages in the context of the TCPA's prohibitions on autodialed calls in section 227(b). But that is unsurprising, because the word "call" is used more extensively in that part of the statute, whereas section 227(c) mainly uses the defined term "telephone solicitation." *See Medvidi*, 2025 WL 2856295, at *3. The FCC has since confirmed in a formal regulation that its 2003 interpretation of the word "call" also applies to text messages in the Do Not Call List context of section 227, specifically. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespread popularity until the 2000s. So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Raimondo*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text

9

message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). That has remained true even after the *McLaughlin* and *Loper Bright* decisions that Dealmed says (at 11–12) should be causing a sea change. For example, the Ninth Circuit recently revisited the "statutory construction" question "under de novo review." *Howard*, 164 F.4th at 1123–24. And the Circuit confirmed its prior holding that a "'text message' constitutes a 'call' within the meaning of the TCPA," without granting any deference to the FCC. *Id.* ("[I]t is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."). The Seventh Circuit's reading also has not changed. *See Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable "telephone solicitations" under section 227(c)).

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9. In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3. The statute's structure independently confirms this plain-meaning reading.

Recent district court decisions outside the Circuit confirm the same conclusion. *See Newell v. Child.'s Dental Health Assocs., LLC*, 2026 U.S. Dist. LEXIS 74360, at *10–21 (E.D. Pa. Apr. 6, 2026) (holding that unsolicited text messages are "calls" under § 227(c) based on the statute's text, structure, and purpose); *Rubin v. Staples, Inc.,* 2026 U.S. Dist. LEXIS 70359, at *16–17 (D.N.J. Mar. 31, 2026) (same, recognizing that "telephone call" encompasses text messages for purposes of § 227(c)(5)).

10

**B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Much of Dealmed's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages.

11

*Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[4] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C. The other Federal Courts in New York and elsewhere in the Second Circuit that have considered this question got it right, including the Second Circuit Court of Appeals.

Consistent with the statute's text and structure, courts—particularly within the Second Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in this District and Circuit have gotten the

---

[4] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

analysis correct. This starts with the Second Circuit Court of Appeals. First, in *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 280 (2nd Cir. 2020) continued, "[i]t is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016). Moreover, an unwanted text message is, for standing purposes, an injury-in-fact. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (noting that 'text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA')."

To be clear, the fact that the Second Circuit in *Melito* and *Duran* relied in part on the FCC's interpretation does not diminish the continuing force of those decisions. Those cases rested on the statutory text and Supreme Court precedent, and the FCC's interpretation was cited as additional support. Post-*Loper Bright*, that structure remains entirely sound: courts first look to the statute, then confirm with agency expertise where Congress has expressly delegated implementation authority. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (explaining that courts must "respect [a] delegation" and review agency action for reasoned decision making under the APA). The TCPA is a textbook example of such a delegation, authorizing the FCC to adopt the rules "most effective and efficient to accomplish the purposes" of the Act. 47 U.S.C. § 227(c)(1)(E). Thus, while the FCC's views are no longer binding under Chevron, they continue to warrant substantial weight under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944), particularly where the agency's position has been consistent for decades.

It is no surprise then that "in this Circuit, district courts have treated text messages as 'calls' within the meaning of the TCPA. "Courts have consistently recognized that a text

13

message constitutes a call within the meaning of the statute. *See, e.g.*, *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018); *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138, 2019 WL 1299939, at *2 (S.D.N.Y. Mar. 21, 2019). Therefore, the text message that Plaintiff received qualifies as a call for which TCPA liability may lie." *Bank v. Simple Health Plans LLC*, 2019 U.S. Dist. LEXIS 215228, *13 (E.D. NY. 2019).

Indeed, as mentioned above, Judge Engelmayer rejected the exact argument by another TCPA defendant in this Court on December 5, 2025 in another case involving Mr. Wilson in *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815 *5 (S.D.N.Y. Dec. 5, 2025) holding:

> In *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88 (2d Cir. 2019), the Circuit addressed whether plaintiffs' receipt of unsolicited text messages, absent any other injury, was sufficient to demonstrate injury-in-fact to confer Article III standing…It reasoned, in part: '[T]ext messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA.'" (Order at 12-13.)

> Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure. It would also be at odds with the Second Circuit's recognition that 'the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA.'" (Order at 15.)

This Court should find the same.

That conclusion is reinforced by a recent decision from Judge Russell in *Wilson v. Easy Spirit, LLC*, 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026), which addressed—and rejected—the same arguments Defendant raises here:

> As other courts have found, the relevant definition of "call" in Webster's Dictionary from the time of the TCPA's passage in 1991 defines "call" as "to get or try to get into communication by telephone." Cole, No. 25-3531, at 1 n.1 (quoting Webster's Ninth

14

New Collegiate Dictionary 197 (1990)). Other contemporary dictionaries use similar definitions. See Webster's Third New World Dictionary 198 (1988) ("[T]o communicate with by telephone").

> The contemporary ordinary meaning of the word "call" is therefore not limited to a voice call. Call, in this context, means to "get or try to get into communication" using a telephone. A text message is sent using a cellular telephone to "get or try to get into communication" with another person…as other district courts have found:

> [T]he fact that text messages had not yet been invented when Congress wrote the TCPA does not foreclose that it intended for the statute to cover future technology. To the contrary, the Second Circuit has recognized, as to § 227(b), that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA"— notwithstanding that that mode of telephone communication did not yet exist. Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019). That text messages did not exist when Congress enacted the TCPA also explains why Congress did not refer specifically to that technology, instead using the broader term "telephone call." See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998) ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985))).

*Wilson v. Better Mortgage Corp.,* 811 F. Supp. 3d 631, 638 (S.D.N.Y. 2025) (cleaned up). I agree with this reasoning, and therefore find that a text message is a "telephone call" for the purpose of the private right of action under § 227(c)(5).

In doing so, Judge Russell confirmed that the TCPA's text, structure, and purpose all support treating text messages as "calls" under § 227(c), and that attempts to exclude them would undermine the statute's consumer-protection framework. This Court should hold the same.

The Second Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and binding precedent all confirm

15

that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to protect numbers, not loopholes.

**D.  Dealmed's arguments for a narrower interpretation are unpersuasive.**

Defendant's contrary arguments rely on misreadings of the statute, selective quotations, and flawed interpretive assumptions. Dealmed would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean a voice communication and therefore the statute categorically excludes text messages. The cases it asserts show support for its arguments include *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)—which is currently on appeal before the Seventh Circuit— and *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp 3d 1270 (N.D. Fla. 2025), but none of the arguments made by Dealmed or in those cases are persuasive.

Consider first how Dealmed reads the word "call" in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

First, Dealmed insists that "call" cannot encompass text messages because in 1991 text messages did not exist. [*ones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991")). That's not how statutory interpretation works. It's true that text messaging was not mainstream in 1991, so Congress didn't have texting specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980) (collecting cases). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008.

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of

16

enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd.*, 585 U.S. at 284. That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984). Or why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See id*. And it is why a 1935 statutory provision about "mowers," from a time when "mowers" were "horse-drawn," applied fifty years later to farm technology that had changed considerably. *In re Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987). Although "horse-drawn mowers" had long been replaced by "hydraulic" "tractor-mounted" machines, Judge Easterbrook explained that the old statutory term embraced the new technology. *Id.* at 1092–93. That's because "[a] statutory word of description does not designate a particular item . . . but a class of things that share some important feature." *Id.* at 1092. Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower,' ... because it would still cut the hay," yet with "a second function, entertainment." *Id.* at 1093.

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "telephone call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Next, Dealmed says that in today's parlance it sounds odd to refer to a text message as a telephone call. Dealmed cites *Davis*—they found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 797 F. Supp. 3d, at *1273; *El Sayed*, 2025 WL 2997759, at *1; *see also Jones*, 792 F. Supp. 3d at 899–900 (relying on a similar intuition).

17

But, as the Ninth Circuit recently confirmed, the "statutory construction" question is not how "call" is used in modern parlance, but how "contemporary dictionaries" with the TCPA's passage defined the "statutory term 'call.'" *Howard*, 164 F.4th at 1123–25. And "text messages" are covered because they "plainly fit[] within" the definition of "call"—in dictionaries contemporaneous with the TCPA—as "an attempt to communicate by telephone." *Id.*

*Howard*'s focus on the meaning of "call" as contemporaneous with the TCPA's passage follows the Supreme Court's instruction that modern colloquial usage is of no consequence because "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. That's because, when language has evolved since a statute's enactment, current usage can be misleading.[5] For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements between employers and employees," and thus exclude independent contractors. 586 U.S. at 114. But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when there's a mismatch between modern intuitions and the original meaning at

---

[5] No doubt most people wouldn't use the word "call" the way the TCPA does in casual conversation, especially nowadays. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," "read receipt," and so forth. As part of that texting-specific lexicon, we are now very accustomed to saying "text message" or just "text" to describe written messaging between phones.

the time of enactment, the latter is what controls—not (as Dealmed's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 797 F. Supp. 3d at *1273.

If Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to go about it. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*, Part I.A. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. The definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th at 497–500 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not

19

actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same).

The Second Circuit has been clear that 227(b) regulates text messages as discussed above. Congress has even "ratified" the longstanding interpretation from "the FCC as well as myriad courts" that "telephone call" "in § 227(b) [] include[s] text messages." *Alvarez v. Fiesta Nissan, Inc., 2026 U.S. Dist. LEXIS 14155* (S.D. Tex. January 26, 2026); *see* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat 3274 (2019) (recognizing that text messages are covered in section 227(b) by providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). "Where, as here, Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation, we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 846 (1986).

And reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Absent good reason to think otherwise, "identical words used in different parts of the same statute" carry "the same meaning." *Henson*, 582 U.S. at 85. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-

20

not-call provisions." *Dawson*, 2024 WL 4765159, at *5.

Nor does Dealmed provide any reason why "call" in section 227(b) covers text messages, but "telephone call" in section 227(c) does not. It doesn't argue that the addition of the modifier "telephone" somehow means a "telephone call" doesn't include a "text message" while just the term "call" does. How could it, as a text is clearly a "telephone" communication.

Defendant's argument also depends on redefining "telephone" itself as a device limited to sound transmission. But nothing in the TCPA adopts such a restrictive definition. By 1991, telephones—including pagers and early digital systems—were already used to transmit non-voice information. And the statute regulates communications sent to a "telephone number," not merely audible transmissions. A text message sent to a telephone number through a telephone network is therefore a "telephone" communication regardless of whether it is conveyed by sound or text. The Court in *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376, *7-8 (C.D. Ca. March 11, 2026) squarely addressed this argument:

> Next, Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). Reply at 4-8. However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is referenced in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

21

This Court should hold the same. Defendant's primary textual argument—that a "call" must be limited to sound-based communications—fails on its own terms.

In further service of its sound-based theory, Dealmed argues that a "call" must be limited to auditory communications because, in its view, the term appears alongside words like "voice" and similar concepts elsewhere in the statute. But that argument rests on a flawed premise. The provisions 47 U.S.C. § 227(b)(1)(A)–(B) do not define "call" at all; they regulate certain types of calls, including those made using an "artificial or prerecorded voice." *Id.* That phrase does not describe all calls, but rather identifies one subset of prohibited conduct. The structure of the statute confirms this: Congress made it unlawful "to make any call" using certain technologies or methods, including but not limited to artificial or prerecorded voices. 47 U.S.C. § 227(b)(1)(A). Thus, the presence of "voice" in those provisions shows only that some calls involve sound—not that all calls must. If anything, the statute's phrasing demonstrates that "call" is the broader category, and "voice" describes just one type within it.

Dealmed's argument also cannot be squared with the statute's text as a whole. Congress did not define "call" in exclusively auditory terms, and elsewhere used broader language such as "call or message" when defining "telephone solicitation." 47 U.S.C. § 227(a)(4). That broader phrasing confirms that the statute contemplates multiple forms of telephonic communication, not all of which are sound-based. Nor does the fact that text messaging technology post-dates the TCPA narrow the statute's scope; as courts have repeatedly recognized, Congress used general language capable of applying to later-developed technologies that inflict the same harms.

Dealmed's fallback claim—that reading "call" to include text messages renders other provisions "incoherent"—fares no better. See ECF No. 16 at 20. The provisions it invokes do not become inconsistent simply because they regulate voice-based calls. The TCPA regulates

22

different categories of telephonic conduct in different ways: some provisions address prerecorded voice calls, others address dialing systems, and still others address solicitations to numbers on the Do-Not-Call Registry. That Congress chose to regulate voice calls explicitly in certain contexts does not imply that non-voice communications fall outside the term "call" altogether. It merely reflects that different technologies present different risks and therefore warrant different rules.

Defendant's parade of hypotheticals—emails, app messages, and push notifications— fails because those communications are not sent to a "telephone number" using a telephone network. The TCPA is specifically concerned with communications directed to telephone numbers, which uniquely intrude upon a device tied to a person's private life. Text messages fall within that category and emails and app-based communications do not.

Finally, Dealmed's attempt to distinguish text messages on the ground that they lack sound ignores the very privacy interests the TCPA was enacted to protect. The statute targets unwanted intrusions into the home and personal sphere, and courts have consistently recognized that unsolicited text messages inflict the same nuisance and invasion of privacy as unwanted calls. A text message, like a ringing phone, demands the recipient's attention, disrupts the use of the device, and intrudes upon the recipient's seclusion. For that reason, treating text messages as "calls" under the TCPA does not create incoherence—it fulfills the statute's purpose.

Finally, Dealmed says that an entirely separate provision distinguishes between calls and text. Dealmed asserts that "in 2018, Congress amended Section 227(e) "and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements.: ECF No. 16 at *9. But the version of section 227(e) that Congress added was to prohibit "inaccurate caller identification information" and did not mention "text messages."

23

Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572 (2010). Rather, Congress just added text messages to the list of prohibited false or misleading "caller identification information" in section 227(e) in 2018.

Nor is Dealmed right to assert that under section 227(e)(8), "call" and "text message" are "distinct." If anything, section 227(e)(8) actually reinforces that texts *are* calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. *See* 47 U.S.C. § 227(e)(8)(A) ("The term 'caller identification information' means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service."). The natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." And unlike Dealmed's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA.

Furthermore, when Congress wrote section 227(e) in 2018, in common parlance both "call" and "text message" meant something different than when Congress wrote the other provisions of the TCPA in 1991. It makes sense that in 2018 Congress would use the term that was *then* used in modern parlance to refer to written messages from a telephone ("text messages") and not just the term that included that meaning in 1991 ("calls"). And the fact that Congress chose to write in modern parlance does not support Dealmed's argument that in doing so Congress meant to silently change the long-accepted meaning of the term "call" in the rest of the section 227. To the contrary, Congress explicitly directed that nothing in section 227(e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]."

Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That includes the judicial decisions and FCC rules and orders that made clear that "call" in section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*, *Satterfield*, 569 F.3d at 954. Indeed, Judge Russell addressed this argument at length in *Wilson v. Easy Spirit*, "the legislative history of the 2018 Amendments contains no evidence that Congress discussed the impact of the proposed Amendments on § 277(c)(5) or considered the private right of action at all when it passed the 2018 TCPA Amendments." 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026).

In short, Defendant's interpretation cannot be reconciled with the TCPA's text, structure, or purpose. The ordinary meaning of "call" at the time of enactment encompasses any attempt to communicate by telephone, including text messages, and nothing in the statute suggests that Congress intended to exclude the most common form of telemarketing communication today. Reading the statute as Defendant proposes would create internal inconsistencies, undermine the Do Not Call Registry's effectiveness, and allow precisely the type of privacy invasion Congress sought to prevent. The better—and correct—reading is the one adopted by the Second Circuit, the FCC, and the overwhelming weight of authority: unsolicited telemarketing text messages are "telephone calls" within the meaning of § 227(c).

## Conclusion

For all of the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety. The TCPA's text, structure, purpose, and controlling precedent all confirm that text messages qualify as "telephone calls" under § 227(c), and therefore fall within the scope of the Do Not Call Registry and its private right of action. Defendant's contrary interpretation rests on atextual limitations, misreadings of the statute, and arguments that have been repeatedly rejected by Courts in this Circuit and elsewhere.

Date: April 20, 2026

*/s/ Anthony Paronich*
Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*