**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CHET MICHAEL WILSON, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

DEALMED MEDICAL SUPPLIES, LLC

Defendant.

---

Civil Action No. 1:26-cv-00009-MKB-TAM

**DEFENDANT DEALMED MEDICAL SUPPLIES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

DISCUSSION ........................................................................................................... 1

I.  PLAINTIFF MISLEADING CITATIONS SHOULD BE
    DISREGARDED. ......................................................................................... 1

II. THE BEST MEANING OF "TELEPHONE CALL" IN 1991
    DOES NOT INCLUDE TEXT MESSAGES. ............................................... 3

    A.  This Court Must Identify the Single Best Interpretation. ........................... 3

    B.  Plaintiff Analyzes the Wrong Term and Relies on the
        Wrong Definitions. .................................................................................... 4

    C.  Common Meaning Controls and Belies Plaintiff's Absurd
        Interpretation. ........................................................................................... 5

    D.  Plaintiff's View Violates Multiple Principles of Statutory
        Interpretation. ........................................................................................... 6

    E.  Plaintiff Seeks to Usurp Congress's Role and Create a New
        Cause of Action. ........................................................................................ 8

III. PLAINTIFF'S RELIANCE ON SECTION 227(B) AND POLICY
     ARGUMENTS DO NOT CHANGE THE OUTCOME. ................................ 8

IV. THIS ISSUE WAS NOT DELEGATED TO THE FCC. ................................ 10

CONCLUSION ........................................................................................................ 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Fiesta Nissan, Inc.*,
No. 25-cv-00343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026)................................................. 4

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016).................................................................................................. 2

*Chyba v. Bayview Loan Servicing, LLC*, No. 314-cv-01415, 2016 WL 5405557
(S.D. Cal. Sept. 27, 2016) ........................................................................................ 10

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .................................................................. 2, 7

*Duran v. La Boom Disco, Inc.*,
141 S. Ct. 2509 (2021)............................................................................................... 2

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020) ...................................................................................... 2

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)...................................................................................... 1, 2, 8, 10

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) .................................................................................. 4

*Hulce v. Zipongo, Inc.*,
132 F.4th 493 (7th Cir. 2025) .................................................................................... 3

*Irvin v. Sonic Industries Services, LLC*,
No. 25-00242, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026).......................... 2, 7, 10

*James v. Smarter Contact, Inc.*,
2026 WL 879244 (M.D. Fla. Mar. 31, 2026) ............................................... 4, 5, 7, 9

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) ........................................................... 3, 4, 7, 8

*Loper Bright Enterprises, Inc. v. Raimondo*,
603 U.S. 369, 400 (2024)..................................................................................... 3, 10

*McGonigle v. Pure Green Franchise Corp.*,
No. 25-61164, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026)..................................... 10

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019) ..................................................................................... 2, 3

*Radvansky v. 1-800-Flowers.com, Inc.*,
    No. 25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026)............................................ 2, 3, 7

*Radvansky v. Kendo Holdings*,
    No. 23-cv-00214, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026).................................................. 9

*Richards v. Shein Distribution Corp.*,
    No. 25-cv-01385, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026) .......................... 3, 4, 7, 8, 9, 10

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ..................................................................................................... 3

*Stockdale v. Skymount Prop. Grp., LLC*,
    No. 25-1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ....................................... 1, 4, 5, 6, 8

*Warciak v. Subway Restaurants, Inc.*,
    949 F.3d 354 (7th Cir. 2020) ..................................................................................................... 3

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001)................................................................................................................... 8

*Wilson v. Better Mortg. Corp.*,
    811 F. Supp. 3d 631 (S.D.N.Y. 2025) ....................................................................................... 4

*Wilson v. Easy Spirit, LLC*,
    No. 25-cv-112, 2026 WL 884170 (D. Conn. Mar. 31, 2026)................................................. 4, 5

*Wisconsin Cent. Ltd v. United States*,
    585 U.S. 274 (2018)............................................................................................................ 1, 6, 8

**Statutes**
47 U.S.C. § 227............................................................................................................................ 2, 7, 9

**Regulations**
47 C.F.R. § 64.1200 ........................................................................................................................... 6

The matter at hand boils down to (i) whether the *best* interpretation of "telephone call" in 1991 encompasses text messages, and (ii) whether it is solely Congress's role to amend the TCPA.

Plaintiff does not attempt to achieve the *best* interpretation. Plaintiff turns to the wrong statutory term in hopes of avoiding the common and ordinary meaning of "telephone call." The issue here is not, as Plaintiff portrays it, an evolution in technology. The issue is whether a "telephone call" embraces an entirely different *form* of communication (a text message). It does not. While there is a split in authority, this Court should follow the better reasoned cases engaging in the analysis the Supreme Court instructed in *Loper Bright* to achieve the best interpretation.

Plaintiff seeks to have this Court adopt an interpretation of "telephone call" covering *every communication* received on a telephone. This is at odds with common sense and principles of statutory interpretation. Plaintiff's interpretation would bring within the umbrella of "telephone call" all forms of modern communication, like emails and in-app messages—simply because they are received on a handheld device. This view is untenable. *See, e.g.*, *Stockdale v. Skymount Prop. Grp., LLC*, Case No. 25-1282, 2026 WL 591842, at * 3 n.5 (N.D. Ohio Mar. 3, 2026).

The Supreme Court teaches that only Congress can "revise statutes in light of new social problems and preferences." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). It is the sole prerogative of Congress, not Plaintiff, to amend the TCPA to update Section 227(c)(5). That Plaintiff perceives text messages to be a modern evil is "is no justification for eschewing the best reading of" the provision at issue. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021).

## DISCUSSION

I.      **PLAINTIFF MISLEADING CITATIONS SHOULD BE DISREGARDED.**

At the outset, Plaintiff cites Circuit authority out of context to argue the Supreme Court, the Second Circuit and others have treated "text messages" as telephone calls. (*See* Dkt. 18 at 2, 7, 8-10, 12, 13.) Plaintiff's citations and discussion of these cases omits critical context.

Plaintiff turns to the Supreme Court's decision in *Campbel-Ewald v. Gomez*, claiming "it has been broadly understood for decades" that "call" encompasses text messages. (Dkt. 18 at 9.) The issue before the Court, however, was *undisputed*. The Court did not analyze whether a text message was covered, and the case pertained to Section 227(b) in any event. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Multiple courts have recognized the Supreme Court *did not* resolve this issue. *See Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-cv-2811, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) ["*1-800-Flowers*"]; *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *Irvin v. Sonic Industries Services, LLC*, No. 25-00242, 2026 WL 1098403, at *2 (N.D. Ga. Apr. 20, 2026).

Plaintiff next turns to older Second Circuit cases, *Melito v. Experian Marketing* and *Duran v. La Boom Disco*, treating them as controlling. (Dkt. 18 at 2, 12, 13.) Neither bears on the issue at hand. *Melito* pertained, in relevant part, to standing. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88 (2d Cir. 2019). *Melito*, which involved Section 227(b), did not analyze the issue at hand. The court simply cited to the FCC's 2003 Order and *Campbell-Ewald*, noting the FCC found text messages covered. That a text message may give rise to standing says nothing of whether it is covered on the merits. *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (disregarding this argument). Indeed, a single call may give rise to standing, but Section 227(c)(5) requires *more than one* call to have a claim. *See* 47 U.S.C. § 227(c)(5). *Duran* also involved Section 227(b) and interpreted the dialer technology covered by that Section. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 (2d Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 2509 (2021), *and abrogated by Facebook*, 592 U.S. at 395. *Duran* treated the text message issue as undisputed, citing to *Campbell-Ewald*. *See id.* at 280 n.1. The *Melito* and *Duran* decisions are not pertinent here.

Plaintiff neglects to mention that these cases (i) involve a different statutory section and term, (ii) assumed without analysis that text messages were covered and (iii) predate *Loper Bright* and *McLaughlin Chiropractic*.[1] The same is true for Plaintiff's reliance on other Circuit cases. (*See* Dkt. 18 at 8, citing *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)). The issue was historically undisputed precisely because parties would not have challenged views of the FCC, pre-*Loper* and *McLaughlin*, whether due to *Chevron* or the Hobbs Act. *See, e.g.*, *Melito*, 923 F.3d at 89 n.1.

While Plaintiff belittles the change effected by *Loper* and *McLaughlin*, the fact is that "[t]his sea change in the legal landscape [brought by the Supreme Court] has left district courts to decide, with fresh eyes, whether § 227(c)(5)'s reference to 'telephone call[s]' also encompasses text messages." *1-800-Flowers*, 2026 WL 456919, at *3. Plaintiff's reliance on pre-*Loper* and *McLaughlin* cases involving a different provision, ignoring essential context, is self-defeating.

## II.    THE BEST MEANING OF "TELEPHONE CALL" IN 1991 DOES NOT INCLUDE TEXT MESSAGES.

### A.    This Court Must Identify the Single Best Interpretation.

This Court's lodestar is to identify the "single, best meaning" of the statutory provision at issue. *See Loper Bright*, 603 U.S. at 400. In other words, "in the business of statutory interpretation, if an interpretation is not the best, it is not permissible." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025) (cleaned up); *see also Richards v. Shein Distribution Corp.*, No. 25-cv-01385, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same). Plaintiff engages in the wrong analysis and turns to (i) the wrong statutory term, (ii) the wrong definitions and (iii) policy arguments to fit the square peg of text messages into the round hole of telephone calls.

---

[1] Plaintiff's citation to *Hulce v. Zipongo* is perhaps his most disingenuous. (Dkt. 18 at 10.) *Hulce* involved a pre-*Loper* summary judgment decision and *never* evaluated the issue at hand. *See Hulce*, 132 F.4th 493 (7th Cir. 2025).

Dealmed acknowledges there has been a split in interpreting "telephone call." However, as detailed in Dealmed's Motion, the contrary authority is in error. The better view comes from those decisions analyzing the *best* interpretation, leaving to Congress to alter the plain language. *See Richards*, 2026 WL 847584, at *5 (noting plaintiff's view was reasonable, but not *best*, and thus dismissed the case); *Jones*, 792 F. Supp. 3d at 901 (same); *Stockdale*, 2026 WL 591842, at *4 ("[I]t is for Congress—not this Court— to fill those gaps in the wake of Chevron's reversal."); *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026) (same).

Plaintiff's cited cases engage in a *Chevron*-esque analysis, searching for reasonable (not best) interpretations. *See Alvarez v. Fiesta Nissan, Inc.*, No. 25-cv-00343, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026) ("The question, then, is whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991."); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 638 (S.D.N.Y. 2025) (same);[2] *Wilson v. Easy Spirit, LLC*, No. 25-cv-112, 2026 WL 884170, at *5 (D. Conn. Mar. 31, 2026) (same); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (same). These courts evaluate whether "call" reasonably embraces a text message and not how "telephone call" is *best* interpreted. These cases should be disregarded.

**B.    Plaintiff Analyzes the Wrong Term and Relies on the Wrong Definitions.**

Plaintiff, conspicuously, focuses on the term "call" and not the statutory term at issue, "telephone call." Plaintiff, further, turns to the verb definition of the term "call" rather than the noun, which properly fits how the term is used. Plaintiff's errors are fatal to his analysis.

First, Plaintiff refers in his brief to the term "call," hoping to analogize to Section 227(b), which speaks to "calls." (Dkt. 18 at 1, 2, 5-11, 15-17, 20-25.) This is in error. The term "telephone"

---

[2] Dealmed incorporates its analysis of *Wilson v. Better Mortgage* (and others) from its Motion. (Dkt. 16 at 15-19.) Notably, what Plaintiff calls the "significant weight of case authority" referred to in *Wilson* fails to account for the wave of contrary cases to have issued since December of 2025.

is critical. *See Stockdale*, 2026 WL 591842, at *3 n.5 (noting other courts "relied on definitions of 'call' contemporaneous with the TCPA's enactment but failed to consider the contemporaneous definition of the modifying 'telephone.'"); *James* 2026 WL 879244, at *4 ("[C]ourts compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991" and distinguishing *Wilson v. Better Mortgage*).

A "telephone" was defined at the time of the TCPA's enactment as "an instrument for reproducing sounds at a distance . . . one in which sound is converted into electrical impulses for transmission by wire." *James*, 2026 WL 879244, at *3 (quoting Merriam-Webster's Collegiate Dictionary 1211 (10th ed. 1993)); *see also Stockdale*, 2026 WL 591842, at *3 n.5 ("In 1991, the definition of telephone was limited to voice capabilities."). A text message, of course, is not capable of reproducing sounds at a distance. It is not a telephone call.

<u>Second</u>, Plaintiff (and the cases he cites) further errs by turning to the verb definition of "call," hoping for an expansive interpretation. (*See* Dkt. 18 at 6, 7, 14.) The term "telephone call" is used as a *noun* in Section 227(c)(5). *See James*, 2026 WL 879244, at *3 ("Dictionaries from before and after the TCPA's enactment define the noun 'call' as 'an act or instance of telephoning,'" and noting other authorities improperly use the verb form) (internal citation omitted); *Stockdale*, 2026 WL 591842, at *3 (same). Plaintiff's effort to use the wrong definition to achieve a broader interpretation is unsuccessful. *See James*, 2026 WL 879244, at *3.

### C.    Common Meaning Controls and Belies Plaintiff's Absurd Interpretation.

Plaintiff commits the critical error of ignoring *common meaning* in favor of an esoteric interpretation that would strike anyone in 1991 as untenable.

The Supreme Court's decision in *Wisconsin Central* proves this point. There the Supreme Court evaluated whether stock options constituted "money remuneration" under an old railroad retirement statute. *See* 585 U.S. at 274. The Court rejected arguments akin to those put forth by

Plaintiff, including the use of an unusual dictionary definition and the notion that new applications of older statutes may arise. *Id.* at 280-84. The Court dismissed one broad definition of "money," holding "while the term 'money' sometimes might be used in this much more expansive sense, that isn't how the term was ordinarily used at the time of the Act's adoption (or is even today)." *Id.* at 281. The Court also noted that while the term "money" may mold over time, stock options "were not then—and are not now—[money remuneration]." *Id.* at 284.

Plaintiff contends that a "call" includes "any attempt to communicate by telephone . . . ." (Dkt. 18 at 6.) While it may be that "call" could sometimes be used in this expansive sense, it is not how it was ordinarily used. Were Plaintiff correct, this interpretation would render all modern communication a "telephone call." An email or an app-notification would all be "telephone calls" simply because it is received on a modern handheld device. This is absurd. *See Stockdale*, 2026 WL 591842, at *3 n.5 ("[C]apabilities of modern cell phones beyond reproducing sounds cannot be covered by the plain meaning of 'telephone call' in 1991. To hold otherwise would suggest that any communication from a modern cell phone is a 'telephone call' under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone."). To paraphrase *Wisconsin Central*, a text message was not then, and is not now, a telephone call.

Plaintiff does not hide from the impact of his view. (Dkt. 18 at 23.) He merely posits that the TCPA is concerned with communications to telephone numbers. (*Id.*) This contention is unsupported. *See, e.g.*, 47 C.F.R. § 64.1200(c)(1). In any event, the *common meaning* of "telephone call" in 1991 governs, not an out-of-context dictionary definition of an isolated word.

### D.    Plaintiff's View Violates Multiple Principles of Statutory Interpretation.

First, Plaintiff contends the definition of "telephone solicitation" favors his interpretation because it is defined to include a "telephone call or message . . . ." (Dkt. 18 at 11.) Plaintiff thus concludes that Section 227(c)(5) must embrace text messages. (*Id.* at 11-12.)

6

There are two problems with this view. At the outset, "Message" does not refer to text message. (*See* Dkt. 16 at 10 n.1); *Jones*, 792 F. Supp. 3d at 900. More substantively, Congress's use of "telephone call **or** message" in this definition makes clear "telephone call" cannot subsume "message." *See Richards*, 2026 WL 847584, at *3 ("If 'telephone call' already included 'calls and messages,' then the TCPA's definition of 'telephone solicitation' would be redundant."); *Davis*, 797 F. Supp. 3d at 1274 (same); *1-800-Flowers*, 2026 WL 456919, at *4 (same). Congress included only "telephone call" in Section 227(c)(5). There is nothing unusual about this limitation; "Congress can (and does) provide private rights of action narrower than its full breadth of regulation." *Davis*, 797 F. Supp. 3d at 1274; *Irvin*, 2026 WL 1098403, at *4 (same).[3]

Second, Plaintiff engages in gymnastics to avoid the impact of Congress's amendment of the TCPA to add text messages in Section 227(e). Plaintiff claims Section 227(e) treats telephone calls and text messages as synonymous. (Dkt. 18 at 24.) This is wrong. Section 227(e)(8) speaks to "a call made using a voice service **or** a text message sent using a text messaging service"— describing a "call" and a "text message" as two different communication forms. 47 U.S.C. § 227(e)(8) (emphasis added). Courts thus find "[t]he reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so." *Richards*, 2026 WL 847584, at *4; *James*, 2026 WL 879244, at *4 ("That Section 227(c)(5)'s 'telephone call' does not include text messages is further confirmed by the addition of 'text message' or 'text messaging service' elsewhere in the TCPA through later amendments to the statute.").

Third, Plaintiff asserts that it would be strange to read "call" in a narrow fashion, and that one would have expected Congress to specifically "*exclude* text messages" in a more overt way.

---

[3] Case in point, Section 227(c)(5) requires the receipt of *more than one* telephone call to have a claim. Section 227(c) and its regulations apply only to telephone solicitations, even though Section 227(b) contains no such limitation. Congress can limit a private right of action as it sees fit.

(Dkt. 18.) This is nonsensical. Congress chose the commonly understood term "telephone call." If Congress expected "telephone call" to be read as embracing all forms of outreach, now and forever, received on a handheld device, one would have expected Congress to use language far broader than the simple "telephone call." *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (noting Congress does not "hide elephants in mouseholes.").

### E.   Plaintiff Seeks to Usurp Congress's Role and Create a New Cause of Action.

A through-line in the cases favoring Dealmed is the notion that it is for Congress to amend the TCPA to address text messages, just as it did with Section 227(e). *See Stockdale*, 2026 WL 591842, at *4 n.7 ("If the plain language is not giving effect to Congress's intent, it is for Congress to correct—not the courts."); *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology . . . which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating."); *Richards*, 2026 WL 847584, at *5 (same).

Plaintiff cannot supplant Congress. The Supreme Court has reiterated time and again—including in the TCPA context—it is for Congress, not courts, to expand a statute to solve for perceived modern ills. This is the entire takeaway of the *Facebook v. Duguid* case, a Supreme Court TCPA case that Plaintiff does not even cite. *See Facebook*, 592 U.S. at 409 ("This Court must interpret what Congress wrote . . . ."); *see also Wisconsin Cent.*, 585 U.S. at 284 (same).

### III.   PLAINTIFF'S RELIANCE ON SECTION 227(B) AND POLICY ARGUMENTS DO NOT CHANGE THE OUTCOME.

Ignoring the statutory term at issue, Plaintiff relies heavily on the term "call" in Section 227(b), arguing that "call" in this section encompasses text messages, and therefore Section 227(c) must as well. (*See* Dkt. 18 at 8, 9, 12, 20-23.) Plaintiff further asserts that including text messages within Section 227(c)(5) makes good policy sense. These premises are fundamentally flawed.

8

First, the statutory term here is "telephone call." Plaintiff asserts no claim under Section 227(b) and the meaning of "call" standing is not at issue. *See James*, 2026 WL 879244, at *5 (rejecting relevance of Section 227(b)); *Radvansky v. Kendo Holdings*, No. 23-cv-00214, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026) (same). Plaintiff fails to establish Section 227(b) applies to text messages, much less that "call" must be "telephone call" identical.

Second, Plaintiff suggests Congress has ratified the application of Section 227(b) to text messages through an amendment adding a provision found at 47 U.S.C. § 227(i), which requires the FCC to prescribe regulations concerning information sharing, and which mentions text messages in the context of Sections 227(b) and 227(e) only. *See* 47 U.S.C. § 227(i). (Dkt. 18 at 20.) This argument establishes Section 227(c)(5) *does not* apply to text messages, as Congress *omitted* Section 227(c)(5). *See Richards*, 2026 WL 847584, at *4 ("Importantly, these statutory subsections make no mention of a text message sent in violation of § 227(c).").

Plaintiff's analogy to Section 227(b)'s reference to pagers misses the point. (Dkt. 18 at 8.) Plaintiff ignores how a pager was *contacted*. Further, that Congress expressly included calls to pagers in § 227(b) only evidences Congress's intent to omit pagers—and their modern analogs . . . .—from § 227(c)." *Richards*, 2026 WL 847584, at *3; *see id.* ("Richards offers no evidence that as of 1991, Congress considered 'telephone calls' to be the same as calls to pagers.").

Third, Plaintiff turns to Section 227(b)'s use of the term "artificial or prerecorded voice" to suggest Congress knew how to limit calls to "voice" calls. (Dkt. 18 at 21-22.) This premise rests on a false dichotomy. Plaintiff isolates the term "voice" to suggest there must be "voice" and non-voice calls. (*Id.*) This is wrong. The TCPA regulates "artificial or prerecorded voice" calls as a separate category from *live* voice calls (not voiceless calls). *See Chyba v. Bayview Loan Servicing, LLC*, No. 314-cv-01415, 2016 WL 5405557, at *2 (S.D. Cal. Sept. 27, 2016).

9

<u>Fourth</u>, Plaintiff's reliance on his perceived purpose of the TCPA does not save his case. (*See* Dkt. 18 at 12, 19, 23.) It is for Congress to decide where to bring text messages within the TCPA. *See Richards*, 2026 WL 847584, at *4 ("[P]olicy considerations do not permit courts to stray from the best reading of a statute, as written."); *Facebook*, 592 U.S. at 409 (rejecting policy arguments as "no justification for eschewing the best reading . . . .").

## IV.     THIS ISSUE WAS NOT DELEGATED TO THE FCC.

Plaintiff argues that the issue at hand was delegated to the FCC. (Dkt. 18 at 2-4 6, 13.) This is meritless. While Congress may "expressly delegate[] to an agency the authority to give meaning to a particular statutory term," Congress did not give the FCC authority to redefine a "telephone call" or expand Section 227(c)(5). *Loper Bright*, 603 U.S. at 394, 395 n.5 (providing examples). Courts have thus rejected this very argument. *See, e.g.*, *McGonigle v. Pure Green Franchise Corp.*, No. 25-61164, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026) (rejecting this argument in the motion to stay context); *Irvin*, 2026 WL 1098403, at *5 (rejecting argument in 12(b)(6) context).

As a final matter, the FCC's views are entitled to no deference or persuasive value. (*See* Dkt. 16 at 18-19.) Nor, as Plaintiff suggests, is the FCC's 2003 Order—issued *twelve years* after the TCPA—a contemporaneous interpretation. *See Loper Bright*, 603 U.S. at 386, 394.

## **CONCLUSION**

If it seems strange to view a text message as a telephone call today, it would have been inconceivable in 1991. The common and ordinary meaning of telephone call has not changed; it did not encompass text messages in 1991, and it does not today.[4] Plaintiff's Complaint should be dismissed with prejudice.

---

[4] Plaintiff invents arguments from Dealmed that were never made. (*See* Dkt. 18 at 22 [an invented quote, docket and page citation]).

Dated: May 13, 2026

Respectfully submitted,

Dealmed Medical Supplies, LLC

By: _____

Maya E. Rivera
1155 Avenue of the Americas, Floor 26
New York, New York 10036
(646) 593-7050
mrivera@beneschlaw.com

Mark S. Eisen (admitted *pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
312-506-3442
meisen@beneschlaw.com

11

**<u>CERTIFICATE OF COMPLIANCE</u>**

I am the attorney who is filing this document.  I hereby certify that this document, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate of compliance, contains 3,500 words as counted by the work-processing system used to prepare the document, in compliance with the applicable word count limit required by Local Rule 7.1(c) of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.